# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SOPHIA MARTINA, on behalf of herself and those similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>L.A. FITNESS INTERNATIONAL, LLC,<br><br>       Defendant. | Civil Action No. 3:12-cv-02063 |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*On the brief:*
Andrew R. Wolf, Esq.
Henry P. Wolfe, Esq.

The Wolf Law Firm, LLC
1520 U.S. Hwy 130 – Suite 101
North Brunswick, NJ  08902
Tel: (732) 545-7900
Fax: (732) 545-1030

*Attorneys for Plaintiff and the Settlement Classes*

**TABLE OF CONTENTS**

I. **INTRODUCTION** ........................................................................................ 1

   A. PROCEDURAL HISTORY .......................................................... 1
      1.    Benefits to the Settlement Classes ................................ 4
      2.    Settlement of Individual Damages and Proposed Award to Named Plaintiff .. 4
      3.    Attorneys' Fees and Costs .............................................. 5
      4.    Definition of the Settlement Classes ............................ 5

   B. NOTICE TO THE CLASS AND CLAIMS MADE ...................... 6

II. **THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED** ............................................................................ 7

   A. STANDARDS AND PROCEDURES FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ............................................. 7

   B. APPLICATION OF THE *GIRSH* FACTORS ............................. 11
      1.    Complexity, Expense and Likely Duration of the Litigation ................. 11
      2.    There have not been any Objections and only one Timely Opt-Out, which is Evidence of the Reasonableness of the Settlement ................. 11
      3.    Stage of the Proceedings and the Amount of Discovery Completed ........... 12
      4.    Risks of Establishing Liability and Establishing Damages ..................... 13
      5.    Risk of Maintaining the Class Action Through the Trial ......................... 13
      6.    Ability of the Defendants to Withstand Greater Judgment ..................... 14
      7.    Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation ..................... 14

III. **CLASS COUNSELS' REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE AND SHOULD BE APPROVED BY THE COURT** ...................... 17

   A. THE PROPOSED ATTORNEYS' FEES AND COSTS AWARD IS REASONABLE UNDER COMMON FUND ANALYSIS ........................................................ 17
      1.    Application of a Common Fund Calculation is Appropriate for this Settlement ................................................................. 17
      2.    The Proposed Attorney Fee and Costs Award is Well Below the Range Typically Approved in Common Fund Settlements ......................... 20

   B. THE PROPOSED FEE AND COST AWARD IS REASONABLE UNDER AN ORIDINARY FEE-SHIFTING LODESTAR ANALYSIS ................................... 23
      1.    Class Counsel's Hourly Rates ....................................... 25
      2.    Hours Expended ............................................................ 25
      3.    Costs .............................................................................. 26
      4.    Preparation of Fee Petition ............................................ 26
      5.    A Reasonable Fee Enhancement is Permitted Because New Jersey Law Applies as to this Issue .............................................. 27
      6.    The Fee Award is Especially Reasonable In Light of the Substantial, Additional Work that Will Be Required From Class Counsel After Submission of this Application .................................... 28

ii

**IV. THE INCENTIVE AWARDS TO THE NAMED PLAINTIFF SHOULD BE APPROVED** ................................................................................................ **29**

**V.  CONCLUSION**…………………………………………………………………..**31**

## I.      INTRODUCTION

Plaintiff hereby moves for final approval of the class action settlement that the Court preliminarily approved by order dated May 28, 2013.  The settlement will provide a fair and reasonable recovery to a class of nearly 50,000 consumers in two settlement classes (21,469 in the Membership Agreement Class & 24,585 in the Fitness Service Agreement Class). No class members objected to the settlement, and only one (in the Fitness Service Agreement Class) made a timely request to be excluded from the settlement.   The Court should therefore grant final approval to the settlement.

### A.      Procedural History

A summary of Plaintiff's factual allegations is as follows: Plaintiff Sophia Martina entered into a Monthly Dues Membership Agreement and a Fitness Services Agreement with Defendant on February 28, 2008 based on certain representations about the timing and availability of training services. Am. Compl. (Wolf Decl. Exh. A) ¶¶11, 31-32 & Exh. A and B. After approximately three months during which the promised services were not provided, Plaintiff attempted to cancel her membership at the originating health club and by mail, but Defendant still charged her another month's dues. Am. Compl. ¶¶37, 38, 44-50, 53. Plaintiff alleges that this had the

effect of forcing her to renew her membership with no justification. In addition, Plaintiff alleges that despite Defendant's failure to live up to its own promises under the Fitness Service Agreement, Defendant refused to accept Plaintiff's cancellation of training services and continued charging Plaintiff's credit card, resulting in thousands of dollars of unauthorized credit card charges. ¶55-57. Plaintiff disputed all of these charges, but Capital One, her credit card company, filed a lawsuit against Plaintiff seeking payment of all of these improper charges. Am. Compl. ¶59; Exh E. Capital One agreed to dismiss that lawsuit without prejudice with a stipulation that it could be re-filed depending the outcome of this action. Wolf Decl. ¶6.

Plaintiff alleges that Defendant's actions violated the New Jersey Health Club Services Act (HCSA), N.J.S.A. 56:8-39 *et seq.*, the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 *et seq.*, the Retail Installment Sales Act (RISA), N.J.S.A. 17:16C-1 *et seq.*, and the Truth-in-Consumer Contract, Notice, and Warranty Act (TCCWNA), N.J.S.A. 56:12-14 *et seq.* in its Membership Agreement and Fitness Service Agreement. Wolf Decl. Exh. A.

Defendant denies any wrongdoing.

Plaintiff filed her Complaint in state court on March 6, 2012. Defendant removed on April 11, 2012 and moved to dismiss on April 26,

2012. Plaintiff filed her First Amended Complaint on May 10, 2012. Defendant moved to dismiss Counts I and II on May 24, 2012. The Court denied Defendant's motion in an opinion issued September 4, 2012. Wolf Decl. ¶7, Exh. B.

On or about November 12, 2012, the Parties engaged in full-day private mediation before the Honorable Layne R. Phillips (Ret.) after which time they reached an agreement in principle to settle this Action [1]. Subsequent to the mediation, on or about November 30, 2012, the Parties agreed to a term sheet which included the principle terms of the settlement. Subsequent to the term sheet the Parties engaged in extensive negotiations to draft and agree to the terms of the comprehensive Settlement Agreement, as well as the wording for the Notice. The settlement was finalized and signed on or about April 17, 2013. Wolf Decl. ¶8.

---

[1] As the Court is no doubt aware, there is another class action pending in the United States District Court for the Eastern District of Pennsylvania, *Boeynaems v. L.A. Fitness International, LLC*, Case No. 2:10-cv-02326, in which a settlement is pending for a nationwide class based on allegations of breach of contract for similar conduct alleged here regarding membership renewal and cancellation practices. However, the *Boeynaems* settlement specifically excludes New Jersey consumers, and does not provide the same relief as the present settlement agreement. Most notably, the *Boeynaems* settlement includes no relief for the Fitness Service Agreement class here, and there are substantial differences in the claims process for Membership Agreement class members. See *Boeynaems* settlement at http://www.usgymsettlement.com/pdf/LAFitnessClassNotice.pdf.

### 1.     Benefits to the Settlement Classes

Members of the Membership Agreement Class will receive a 45-Day Access Pass to Defendant's health clubs; the pass can be activated using the settlement website or by phone on or before September 17, 2014. Membership Agreement Class members can also request receive monetary damages equal to one-third (1/3) of one month of dues by filing a claim online, by phone, or by mail, by September 16, 2013. Wolf Decl. Exh. C.

Members of the Fitness Service Agreement Class will receive, at their option, either two free individual personal training sessions at a New Jersey location (other than a "Signature Club") or a $100 credit toward the purchase of a new monthly membership at any New Jersey location. These benefits must be claimed by September 17, 2014 within one year, and Defendant will make all reasonable efforts to accommodate requests to use benefits outside of New Jersey for those class members who no longer live in New Jersey (upon request). Wolf Decl. Exh. C. Funds from uncashed checks will not revert to Defendant, but will be paid as a *cy pres* award to Legal Services of New Jersey.

### 2.     Settlement of Individual Damages and Proposed Award to Named Plaintiff

Defendant will also pay $11,065.28 in full settlement of Plaintiff's individual damages. This amount includes paying the amount  claimed by

Capital One in its lawsuit against Ms. Martina. Wolf Decl. Exh. C. Furthermore, Defendant has agreed to pay named the named Plaintiff $3,000 as an incentive award for her efforts on behalf of the class. *Id*.

### 3.    Attorneys' Fees and Costs

Subject to Court approval, Defendants have agreed to pay Class Counsel $200,000 towards their reasonable attorneys' fees and expenses incurred in connection with this litigation. Class Counsel is now making an application to the Court for an award of reasonable attorneys' fees and expenses incurred in connection with this litigation.  This payment will not reduce the benefits to the Settlement Classes.  Wolf Decl. Ex. C, Settlement Agreement 3.5.

### 4.    Definition of the Settlement Classes

On May 28, 2013, the Court preliminary approved the settlement and certified two settlement classes:

> "Fitness Service Agreement Class" includes all Individuals who entered into a Fitness Service Agreement in the State of New Jersey with L.A. Fitness during the Class Period of February 28, 2006 through March 31, 2012.

> "Membership Agreement Class" includes all Individuals who (a) entered into a Monthly Dues Membership Agreement in the State of New Jersey with L.A. Fitness during the Class Period, and (b) who paid for an additional month of dues (in addition to the application of pre-paid last month dues) *after* L.A. Fitness received a Notice of Cancellation, and (c) the payment of an additional month of dues was not subsequently refunded.

Wolf Decl. Exh. C.

**B.** <u>**Notice to the Class and Claims Made**</u>

The Settlement Administrator delivered the Court approved Notice to all members of both Settlement Classes. Jue Declaration (attached to Wolf Decl. as Exhibit D), ¶¶ 6-7, 9-10. The Settlement Administrator updated the addresses of those Settlement Class members as necessary by means of the National Change of Address database maintained by the U.S. Postal Service prior to the initial mailing of the Notice. <u>Id.</u> Notices that were returned undeliverable were sent to an address search firm. Notice was successfully delivered to 95.87% of the 21,469 members of the Membership Agreement Class and to 96.2% of the 24,585 members of the Fitness Service Agreement Class. For the Membership Agreement Class, Notice was successfully mailed to 12,041 out of 12,885 and successfully emailed to 7,290 out of 8,584. Of the 1,294 whose emails were returned as undeliverable, 1,252 were then successfully served by mail. For the Fitness Service Agreement Class, Notice was successfully mailed to 9,848 out of 10,722 and successfully emailed to 9,880 out of 13,863. Of the 3,983 whose emails were returned as undeliverable, 3,922 were then successfully served by mail. *Id.* at ¶¶8, 11.

For the Membership Agreement Class, 633 filed claims as of August

22, 2013, with 324 activating their 45-day access pass and 617 requesting monetary payment. These class members have until September 16, 2013 to request monetary payment and until September 17, 2014 to activate their passes. For the Fitness Service Agreement Class, 440 filed claims, with 178 requesting training and 262 requesting Credit. *Id.* at ¶¶12-13. These class members have until September 17, 2014 to request their relief.

No class members objected to the settlement. The administrator received one timely and one untimely request for exclusion in the Fitness Service Agreement Class (0.008% of the Class, including the untimely request). *Id.* at ¶¶14-16.

## II.   THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED

### A.   <u>Standards and Procedures for Final Approval of Class Action Settlements</u>

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 317 (3d Cir.1998) ("Prudential II"). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Federal Rule of Civil Procedure 23(e) mandates that a class action cannot be settled without court approval:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

See also, *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Prudential II*, 148 F.3d at 316. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.1995). The ultimate determination whether a proposed class action settlement warrants approval resides in the court's discretion. *Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Girsh v. Jepson*, 521 F.2d 1153, 156 (3d Cir.1975). Approval of a settlement is warranted if the settlement is "fair, reasonable, and adequate." *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.2001)(citing *Fed. R. Civ. P.* 23(e)).

For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *Fed.R.Civ.P.* 23(a)-(b). Class certification cannot be presumed, and a class may be certified only after a rigorous analysis demonstrates that all Rule 23 requirements are met. See *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir.2008). Even where a plaintiff seeks certification of a settlement class, as opposed to formal class certification, courts "must

consider the propriety of certification as if the case were to go to trial." *In re Prudential*, 962 F.Supp. at 508. See also *John M. Dewey, et al. v. Volkswagen of America, et al.*, 728 F. Supp.2d 546 (D.N.J.2010).

While the Court has discretion in determining whether to approve a settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F.Supp. 446, 452 (E.D.Pa.1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), aff'd, 726 F.2d 956 (3d Cir.1983). The court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir.1974).

The Third Circuit has identified nine factors – commonly known as the *Girsh* factors - that a district court should consider when determining whether a proposed class action settlement warrants approval. These factors include:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (citation omitted). See also *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).[2]  The Settlement before the Court in this case satisfies these factors, and, therefore, final approval of the

---

[2] The *Girsh* factors are not exhaustive, however, and the Third Circuit has advised that the District court may consider other relevant factors in determining whether final approval should be granted. *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir.2006) (citing *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3d Cir.1998)).These may include, *e.g.*:

> [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential II*, 148 F.3d at 323.

Settlement should be granted.

**B. <u>Application of the *Girsh* Factors</u>**

        **1.**    **Complexity, Expense and Likely Duration of the Litigation**

If this litigation were to proceed, significant expense and delay would result, which likely would not benefit Settlement Class members. Continued litigation would entail substantial risk, given that Defendant is a large corporation with a well-funded defense handled by skilled counsel. Continued litigation would also require significant judicial resources and would put an unnecessary burden on the Parties, causing them to expend additional time and expenses.

In addition, any judgment possibly obtained in this matter could be appealed, thereby further extending the duration of this litigation. The proposed Settlement, on the other hand, removes the risk inherent in a trial, reduces costs, and provides exceptional benefits on behalf of the Settlement Classes.

        **2.**    **There have been not been any Objections and only one Timely Opt-Out, which is Evidence of the Reasonableness of the Settlement**

A most singular indication of fairness of a proposed class Settlement is the reaction of the Settlement Classes. Pursuant to the Preliminary Approval Order, any Settlement Class Member could either opt-out of the

Settlement or file an objection by July 23, 2013.  To date, no member of either Settlement Class has objected to the settlement, and only two requested exclusion (one untimely, both from the Fitness Service Agreement Class). *See* Wolf Decl. ¶11.

### 3.   Stage of the Proceedings and the Amount of Discovery Completed

This factor requires the Court to analyze the stage of the proceedings to determine "the degree of case development that…counsel have accomplished prior to the settlement." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir.1995). Essentially, the Court must ensure that the Settlement is not the product of a quick and uniformed decision-making process.

This factor has been satisfied.  The settlement was negotiated after the exchange of initial disclosures as well as the production of additional documents relevant to the settlement. Adequate discovery took place to determine the appropriate framework for settlement, particularly because the parties' primary dispute is a legal, not a factual one.

Further, the Settlement Agreement provided for confirmatory discovery consisting of a certification regarding the identification of Settlement Class members. Class Counsel reviewed the confirmatory discovery and are satisfied with the contents of same. Thus, this factor

likewise weighs in favor of approval.

### 4.     Risks of Establishing Liability and Establishing Damages

The Court must determine whether the proposed Settlement is within a range that experienced attorneys could accept in light of the relevant risks of the litigation. *In re GMC*, 55 F.3d at 806.

The settlement is fair because both sides carried significant risk in this litigation. If Plaintiff were to reject the settlement reached, in favor of continued litigation, then the class might receive nothing at all – as risks are inherent in any litigation, it is also possible that a fact-finder would not rule in favor of Plaintiff or that a Class would not be certified. Class certification in particular has proven to be a significant hurdle in large cases like this one.

While Class Counsel believes the class claims are meritorious, counsel are experienced and realistic, and understand that the resolution of liability issues, trial, and the appeal process are inherently uncertain in terms of both outcome and duration. Thus, this factor also weighs in favor of approval of the settlement.

### 5.     Risk of Maintaining the Class Action Through the Trial

After the Supreme Court's opinion in *Amchem Prods. v. Windsor*, the risk of maintaining the class action through trial "may not be significant" to a court's determination of the approval of a settlement. *Prudential II*, 148

F.3d at 321. Particularly because this is a Settlement Class, "this factor adds little to the consideration of the fairness of the Settlement." *In re Safety Components Inc. Sec. Litig.*, 166 F.Supp.2d 72, 91 (D.N.J.2001). As discussed above, this litigation carried significant risks.  It is possible that if the Plaintiff rejected settlement in favor of pursuing litigation, that the Court would not have certified this matter as a class action at all.  This risk weighs toward settlement.

### 6.    Ability of the Defendants to Withstand Greater Judgment

This *Girsh* factor "is concerned with whether the Defendants could withstand a judgment for an amount significantly greater than the settlement." *Cendant*, 264 F.3d at 240.  Because information on Defendant's net worth was not available in discovery in this case—unlike in a Fair Debt Collection Practices case for example—this factor remains unknown. However, as explained below, the total value of the settlement exceeds $3.8 million.

### 7.    Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The fairness of the settlement process and of the Settlement Agreement itself also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See*

*In re GMC*, 55 F.3d at 787-88; *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F.Supp. 659 (D.Minn.1974)("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F.Supp. 446 (E.D.Pa.1985)("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The Settlement was specifically negotiated by experienced counsel to meet all the requirements of Rule 23 as discussed in *Amchem*. Accordingly, the Settlement was not the product of collusive dealings, but, rather, was the result of extensive arm's-length negotiations by counsel for the Parties. Further, continued litigation would be long, complex and expensive, and a burden to court dockets. *Lake v. First National Bank*, 900 F.Supp. 726 (E.D.Pa.1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F.Supp. 1297 (D.N.J.1995) (burden on crowded court dockets to be considered).

There is no reason to doubt the fairness of the proposed Settlement Agreement. The Settlement Agreement was the result of good faith, arm's-length negotiations. The proposed Settlement Agreement does not unduly

grant preferential treatment to the Class Representatives or to segments of the Settlement Class, and it does not provide excessive compensation to Counsel.

The relief provided by the settlement was directly based on the relief sought and the violations complained of. This relief amounts to a maximum potential recovery of over $3.8 million. The benefits can be valued as follows. Plaintiff paid $34.99 per month for her gym membership; thus, the 45-day access pass provided by the settlement has an approximate retail value of $52.48, and one-third of a month's dues has a value of approximately $11.67. This relief is based on Plaintiff's claim that Defendant improperly forced her to pay an extra month's dues. If all 21,469 Membership Agreement Class members claimed their relief by the September 2014 deadline, that portion of the settlement would be worth $1,377,164.67. Likewise, the relief package for the Fitness Service Class has a value of $100 per class member, either in the form of a $100 credit or two training sessions, which Defendant represented have a retail price of $50 each. This relief is based on Plaintiff's claim for a $100 civil penalty for violations of the Truth in Consumer Contract, Warranty and Notice Act. If all 24,585 members of the Fitness Service Agreement Class claimed their passes by the September 2014 deadline, that portion of the settlement would

be worth $2,458,500.00. Thus, the maximum value of the settlement amounts to over $3.8 million..

Lastly, it is the opinion of Class Counsel that the settlement achieved in this case provides meaningful relief to the members of the Settlement Classes.  See Wolf Decl. ¶10.

## III.   CLASS COUNSELS' REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE AND SHOULD BE APPROVED BY THE COURT

Reasonable attorneys' fees and costs are mandated by the CFA and TCCWNA. *N.J.S.A.* 58:8-2 and 56:12-17.  Defendant agreed to pay Class Counsel's reasonable attorneys' fees and costs in the amount of $200,000. After extensive negotiations, Defendant agreed to pay this amount and to not oppose Class Counsels' application for same. Attorneys' fees and costs to Class Counsel were not discussed until after a class-wide settlement was reached on behalf of the Settlement Classes.  The Settlement Classes were informed of the nature of the request in the Notice.

## A.   The Proposed Attorneys' Fees and Costs Award is Reasonable under a Common Fund Analysis

### 1.   Application of a Common Fund Calculation is Appropriate for this Settlement

Where, as here, the parties enter into a class action settlement providing a common and readily-valued benefit for a class of claimants, the

common fund method (also known as percentage-of-fund method) for calculating fees is favored over the lodestar method, even in cases involving fee-shifting statutes. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *O'Brien v. Brain Research Labs*, LLC, 2012 U.S. Dist. LEXIS 113809, 68 (D.N.J. Aug. 8, 2012); *Dewey v. Volkswagen of America*, 728 F.Supp.2d 546 (D.N.J.2010)(J. Schwartz), *rev'd on other grounds by Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170 (3d Cir.2012). In *O'Brien*, the court explained

> In *In re Diet Drugs*, the appellate court rejected the argument that the lodestar method should have been used to calculate fees in a class action settlement simply because a statutory fee-shifting claim was involved. 582 F.3d at 540. In the context of a class settlement, the Court of Appeals for the Third Circuit determined that "there [wa]s no such [fee-shifting] statute at work here. [Defendant] voluntarily undertook the process of compensating opposing counsel, by establishing and funding various escrow accounts dedicated to the payment of claimants' legal costs." *Id*. Consequently, the Court determined that the case fell under the common fund doctrine and that the percentage-of-recovery method was appropriate. Thus, *In re Diet Drugs* and *In re Gen. Motors* [*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. Pa. 1995)] teach that if a class action is brought under a fee-shifting statute but is resolved through a settlement, then the fees should be calculated based upon the percentage-of-recovery method if: **(1) the benefits to the class can be valued; (2) the compensation to the class and counsel come from the same source; and (3) the source has voluntarily agreed to pay class counsel's fees**. 582 F.3d 524; 55 F.3d 768.

*O'Brien, supra* at 2012 U.S. Dist. LEXIS 113809, 69 (emphasis added).

The present settlement clearly satisfies all three factors discussed in *In re Diet Drugs* and *O'Brien* favoring application of the percent-of-fund method.  The second and third factors are easily satisfied because there is no question that "(2) the compensation to the class and counsel come from the same source; and (3) the source has voluntarily agreed to pay class counsel's fees." *O'Brien, supra* at 2012 U.S. Dist. LEXIS 113809, 69.

 As to the first factor discussed *In re Diet Drugs*, "(1) the benefits to the class can be valued", the value of the fund here can be readily calculated as $3.8 million by multiplying the relief available to each class and subclass member by the number of class and subclass members, as described in section II.B.7 of this brief.  See also Wolf Decl., ¶31.  Under prevailing case law, the value of the fund for purposes of calculating the fee is generally based on the total relief available to the class, and not on the amount of claims actually made against the fund.  See *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir.2007); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-97 (11th Cir.1999); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980).  In *Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546 (D.N.J. 2010), the court noted that

> Although the actual value depends on the number of class members who submit claims, such uncertainty does not

preclude defining a fund as a common fund [for fee calculation purposes]. See Boeing Co. v. Van Gemert, 444 U.S. 472, 477, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (allowing attorneys' fees under the common fund doctrine even when a portion of the fund is unclaimed since each class member had present interest and absentee class members had received a benefit within the meaning of the common-fund doctrine).

Id., 728 F. Supp. at 598, fn 75.[3]

### 2.   The Proposed Attorneys' Fee and Costs Award is Well Below the Range Typically Approved in Common Fund Settlements.

In common fund cases in the Third Circuit, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir.1995)(citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D.Pa.1990)).  See also *In re Elec. Carbon*

---

[3] While the relief obtained for the class and subclass is partly comprised of in-kind service vouchers, it is not a "coupon settlement" of the type requiring heightened scrutiny under The Class Action Fairness Act of 2005 (CAFA) See 28 U.S.C. § 1712 (2006). "Although Congress did not define the term 'coupon' in the statute, courts have generally considered a coupon settlement to be one that provides…a discount towards the future purchase [from] the defendant." *Radosti v. Envision EMI, LLC*, 717 F.Supp.2d 37, 55 (D.D.C.2010). Here, neither the 45 day pass nor the free personal training vouchers require class members to spend any additional money to obtain their full benefit; they are not "discounts coupons." See *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, 16 (N.D. Cal. Nov. 16, 2007)("the in-kind relief offered in this case is not a 'coupon settlement' because it does not require class members to spend money in order to realize the settlement benefit.").

*Prods. Antitrust Litig.*, 447 F.Supp.2d 389, 408 (D.N.J.2006)(surveying common fund fee awards approved in the Third Circuit, and finding that "the requested percentage of 26% is not excessive judged by these norms.").

Here, the proposed $196,521.93 attorneys' fee award [4] is approximately 5.2% of the $3.8 million fund made available to the two classes under the settlement. [5] The proposed fee is therefore reasonable under the norms and precedent in this Circuit.

In addition to looking at the proposed fee award relative to the fund made available to the class, courts in the Third Circuit must conduct a "lodestar crosscheck" to confirm the reasonableness of the proposed fee in light of the hours of work performed multiplied by class counsel's reasonable billing rates.

> In common fund cases such as this one, the percentage-of-recovery method is generally favored because "it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" Rite Aid, 396 F.3d. at 300 (quoting In re The Prudential Ins. Co. of Am., 148 F.3d 283, 333 (3d Cir. 1998)). But we have recommended that

---

[4] The Settlement Agreement provides for $200,000 for attorneys' fees and expenses.  Subtracting the $3,478.07 in expenses incurred by Plaintiff to date (Wolf Decl., ¶24) yields a total fee award of $196,521.93.

[5] As discussed in the previous section of this brief, the value of the settlement for the purpose of fee calculation under a percent-of-fund analysis is the maximum amount available to class members.  See *Dewey v. Volkswagen of Am.*, *supra*, 728 F. Supp. 2d at 75 and cases cited in Section III.A.1 of this brief, *supra*.

> district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award. See Rite Aid, 396 F.3d at 305; Prudential, 148 F.3d at 333. The cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier. 4 "[W]hen the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." Rite Aid, 396 F.3d at 306. The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method. See id. at 307.

*In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir.2006).   In the Third Circuit, "**multiples from 1 to 4 [are] frequently awarded in common fund cases**" in which the lodestar crosschecks is performed.  *In re Elec. Carbon Prods. Antitrust Litig.,supra*, 447 F. Supp. 2d at 409 (citing *Prudential, supra,* 148 F.3d at 341)(emphasis added).[6]

Here, class counsel's lodestar comes to $161,615.50, resulting in a lodestar multiplier of approximately 1.2.   This is well within the limits of the 1 to 4 multipliers "frequently awarded in common fund cases" in the Third Circuit.  *In re Elec. Carbon Prods. Antitrust Litig.*, *supra*, 447 F.Supp.2d at 409. Therefore under the percentage-of-fund analysis and lodestar crosscheck, the proposed fee and cost award is reasonable and in

---

[6] Moreover, "[s]ince a full-blown lodestar analysis is not required for cross-check purposes, a summary of the documentation of hours actually expended is useful without probing more deeply into each hour claimed or each task performed."  *In re Elec. Carbon Prods. Antitrust Litig.*, *supra*, 447 F.Supp.2d at 410.

fact within the low end of fees typically permitted in common fund cases in the Third Circuit.

**B.**   **The Proposed Fee and Cost Award is Reasonable Under an Ordinary Fee-Shifting Lodestar Analysis.**

Although it is Plaintiff's position that a common fund / percentage-of-fund calculation is appropriate here, as discussed in the previous section of this brief, *infra*, the proposed $196,521.93 attorneys' fee and cost award is also reasonable under an ordinary fee-shifting lodestar analysis. The CFA and TCCWNA are among a limited number of statutes that authorize a court to depart from the American Rule and award attorney fees to a prevailing party. MANUAL FOR COMPLEX LITIGATION (THIRD), §24.11 (1995) ("MANUAL"), citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983). As explained in the Manual,

> The analysis of attorneys' fees in a statutory fee (or fee-shifting) case differs philosophically and jurisprudentially from that which applies to a common fund case. The shifting of attorneys' fees in a statutory fee case serves the public policy of encouraging private enforcement of substantive rights created by Congress or the Constitution. For that reason, the lodestar is the appropriate method.

MANUAL, at §24.13(citations omitted). Third Circuit jurisprudence has repeatedly made the same point. *Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190, 195 n.1 (3d Cir.2000)(noting that the "lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to

reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage of recovery method would provide inadequate compensation.")(quoting *Prudential II,* 148 F.3d at 333). See also, *Brytus v. Spang & Company*, 203 F.3d 238, 242-43 (3d Cir.2000) (no abuse of discretion in applying lodestar analysis to set a reasonable attorneys' fee under a statutory fee provision).

In fee-shifting cases, the Supreme Court has held that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Hensley*, 461 U.S. at 433; *Gunter*, 223 F.3d at 195 n.1.  The lodestar is presumed to yield a reasonable fee.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The lodestar and expenses of Class Counsel in this matter is as follows: The Wolf Law Firm, LLC spent 388.9 hours on this matter to date, with a lodestar of $161,615.50 at current rates, plus costs and expenses equal to $3,478.07, adding up to a total of $165,093.57. The Defendants agreed to pay and Class Counsel have agreed to accept the sum of $200,000. This is equivalent to approximately 5.4% of the total value of the settlement – clearly a reasonable amount -- and this amount does not account for time

going forward, estimated at about $9,800. Wolf Decl. ¶25.

### 1.    Class Counsel's Hourly Rates

The current hourly rates for Class Counsel are well within the range of what is reasonable and appropriate in this market. Class Counsel's Declaration supports their current hourly rates. See Wolf Decl. ¶¶20-22. The hourly rates of Class Counsel are the same as the regular current rates charged for their services in their standard non-class action matters. *See* Wolf Decl. ¶18. There has not been any alteration or deviation from the Class Counsel's respective hourly rates to account for the added complexity or increased risk factor of this action. Class Counsel concentrate their practice in the area of consumer protection law and class actions. Their hourly rates are within the range charged by attorneys with comparable experience levels for consumer class action litigation of a similar nature. Class Counsel provided a Declaration detailing their experience and biographies. *See* Wolf Decl. Ex. E.

### 2.    Hours Expended

In support of this petition, Class Counsel have submitted detailed, contemporaneously produced time records specifying the date of work performed, the attorney performing the work, the nature of the work, the amount of time spent and the hourly rate charged for the tasks. Wolf Decl.

Exh. H & I. These submissions readily satisfy this Circuit's requirement of the degree of specificity required of a party seeking attorneys' fees.  See *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir.1990)(specificity required to extent necessary to determine if the hours claimed are unreasonable for the work performed).  There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433.  All the time submitted was reasonably necessary to achieve the successful outcome for the Plaintiff and the Settlement Classes.

### 3.    Costs

Class Counsel's Declaration filed herewith show that costs as set forth therein were incurred in the prosecution of this case. All of the costs were advanced by Class Counsel and were necessarily incurred and were recorded contemporaneously.  Wolf Decl. Ex. I.

### 4.    Preparation of Fee Petition

Class Counsel is entitled to recover for the time spent in preparing the fee application.  *Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir.1978).  Class Counsel has included in their submission time spent in preparing the instant petition, which is reasonable.  See *Becker v. ARCO Chemical Company*, 15 F. Supp. 2d 621 (E.D.Pa.1998)(counsel awarded

compensation for 64.1 hours spent on fee petition).

### 5.   A Reasonable Fee  Enhancement is Permitted Because New Jersey Law Applies as to this Issue

Where, as here, litigation resolves claims under New Jersey fee shifting statutes, New Jersey law on fee calculation applies even in federal court:

> When a district court's jurisdiction is predicated on diversity of the parties, or when the court hears a state-law claim based on its supplemental jurisdiction, as we will assume it did here, the court must determine whether, under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), a matter is substantive or procedural. *Simmons v. City of Phila.*, 947 F.2d 1042, 1085 (3d Cir. 1991)….[I]f the matter is substantive, the court must apply the substantive law of the forum state. See *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995).
> ****
> [W]e have held that, for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state law. *Abrams*, 50 F.3d at 1223.

*Chin v. Chrysler LLC*, 538 F.3d 272, 278-279 (3d Cir.2008).

New Jersey law provides for fee enhancements in awards under New Jersey fee shifting statutes, such as the CFA and TCCWNA. *Walker v. Giuffre*, 209 N.J. 124 (2012); *Rendine v. Pantzer*, 141 N.J. 292 (1995). Contingency enhancements effectuate a New Jersey policy inherent in New Jersey's fee shifting statutes to compensate attorneys for the risk of non-payment when they take on cases under these statutes on a contingency

basis.  *Walker*, 209 N.J. at 139 ("these [fee enhancement] awards are only available in those cases that *our* Legislature has selected for statutory fee-shifting so as to achieve its broader public policy purposes of attracting counsel to socially beneficial litigation." )

Under New Jersey law, contingency enhancements in fee-shifting cases ordinarily should range between five and fifty percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar.  *Rendine, supra*, 141 N.J. at 343.   Here, the proposed fee award of $196,521.93 with a lodestar of $161,615.50 reflects an enhancement of just 24.3%.   This is well within the "ordinary" range and on the lower end of the "typical" range of enhancements under *Rendine* and *Walker*, and therefore the proposed fee award is reasonable.

> **6.      The Fee Award is Especially Reasonable In Light of the Substantial, Additional Work that Will Be Required From Class Counsel After Submission of this Application**

As noted above, the lodestar does not account for substantial that class counsel will be required to perform going forward in this matter, including attending the final approval hearing, overseeing the implementation of the settlement, and responding to the inquiries of settlement class members. The process will go on for some time after the relief is provided to class

members. Counsel estimates that the lodestar for post final approval legal work will be approximately $9,800,400, which is a total of 20 estimated hours at a blended hourly rate of $470. Wolf Decl., ¶25. Taking this time into account would bring the lodestar to $171,415.50 which reflects an enhancement of approximately 12.8%. This is in the lower end of the "ordinary" range and below the "typical" range. This further militates in favor of a finding that the proposed fee award is fair and reasonable.

## IV.     THE INCENTIVE AWARDS TO THE NAMED PLAINTIFF SHOULD BE APPROVED

The settlement also provides that Defendant will also pay $11,065.28 in full settlement of Plaintiff's individual damages. This amount includes paying the amount claimed by Capital One in its lawsuit against Ms. Martina. Wolf Decl. ¶30, Exh. C. Furthermore, Defendant has agreed to pay named the named Plaintiff $3,000 as an incentive award for her efforts on behalf of the class. Plaintiff was intimately involved with this matter including assisting with the investigation and drafting the Complaint. Plaintiff was involved in the settlement negotiations and approved the settlement, and was committed to appearing at a deposition and trial if necessary. Wolf Decl. ¶30.

The award to the Named Plaintiff is reasonable and should be approved. See *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 258-29

(D.N.J.2005); *In re Insurance Brokerage Antitrust Litigation*, 2007 U.S. Dist. LEXIS 74711, *60, 2007 WL 2916472, *8, MDL Docket No. 1663 (D.N.J. Oct. 5, 2007). The law recognizes that it is appropriate to make modest awards in the range of $1,000 to $20,000 in recognition of the services that such plaintiffs perform in a successful class action. See *Varacallo*, 226 F.R.D. at 258-29 (awards ranging from $1,000 to $10,000); *In re Insurance Brokerage Antitrust Litig.*, 2007 WL 2916472, *8 (D.N.J. Oct 05, 2007)($10,000 incentive award to each plaintiff, resulting in total payment of $250,000); *Lazy Oil v. Witco Corp.*, 95 F.Supp.2d 290, 324-25 (incentive awards of $5,000 to $20,000 awarded); *Godshall v. Franklin Mint Co.*, 2004 U.S. Dist. LEXIS 23976, *21, 2004 WL 2745890, *4, No. 01-CV-6539 (E.D. Pa. Dec. 1, 2004) ($20,000 to each named plaintiff). The amount requested here is reasonable and is not out of proportion to the overall settlement. Class Counsel respectfully request that the incentive award be approved.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the settlement, award the requested and agreed-upon counsel fees and costs, and grant the incentive award to Plaintiff.

Respectfully submitted,

*s/ Andrew R. Wolf*
Andrew R. Wolf, Esq.
The Wolf Law Firm, LLC
1520 U.S. Hwy 130 – Suite 101
North Brunswick, NJ  08902
Tel: (732) 545-7900
Fax: (732) 545-1030
*Attorneys   for   Plaintiff   and   the*
*Settlement Classes*

Dated:  September 6, 2013