**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

SOPHIA MARTINA, on behalf of herself
and all others similarly situated,

                Plaintiff,

                v.

L.A. FITNESS INTERNATIONAL, LLC,

                Defendant.

_____

**OPINION**

Civ. No. 2:12-cv-2063 (WHW)

**Walls, Senior District Judge**

       Sophia Martina, individually and on behalf of the putative class she represents, moves for an Order Granting Final Approval to Class Action Settlement, Awarding Fees and Costs to Class Counsel and Granting Incentive Award to Plaintiff Martina. Plaintiffs' motions are granted.

**FACTS AND PROCEDURAL BACKGROUND**

       Ms. Martina filed her initial complaint on March 7, 2012, Docket Entry Number ("D.E. No.") 1-1, and her amended complaint on May 10, 2012, D.E. No. 11. The complaint alleges violations of various New Jersey statutes, both on behalf of her and two putative classes of consumers: those who canceled memberships with L.A. Fitness health clubs (the "Membership Agreement Class") and those who entered into contracts for personal training sessions (the "Fitness Service Agreement Class"). Am. Compl. at 10-23.

       Defendant L.A. Fitness ("Defendant") moved to dismiss Plaintiffs' Amended Complaint. D.E. Nos. 5, 13. This Court denied that motion on September 4, 2012. D.E. No. 19. On April 22, 2013, Plaintiff filed an unopposed motion for preliminary approval of class settlement. D.E. No.

37. On May 28, 2013, the Court granted preliminary approval, certifying the classes for purposes

of settlement only and issuing instructions to begin notifying class members. D.E. No. 41. On

September 17, 2013, the Court presided over a fairness hearing as required by Federal Rule of

Civil Procedure 23(e). In the interim, no class members objected to the settlement and only one

member opted out; no objections were raised at the fairness hearing. Pls.' Settl. Br. at 11-12,

D.E. No. 46.

On September 27, 2013, the Eastern District of Pennsylvania approved a final settlement

in an action addressing similar claims by a class of consumers from over a dozen states other

than New Jersey. Mem. re: Approval of Settl. and Attorneys' Fees at 3-4, Sept. 27, 2013, E.D.

Pa. Do. No. 2:10-cv-2326, D.E. No. 85.

### A. Settlement Agreement

This Court's opinion granting preliminary approval certified the classes under the

following definitions:

> The "Fitness Service Agreement Class" includes all Individuals
> who entered into a Fitness Service Agreement in the State of New
> Jersey with L.A. Fitness during the Class Period of February 28,
> 2006 through March 31, 2012.
>
> The "Membership Agreement Class" includes all Individuals who
> (a) entered into a Monthly Dues Membership Agreement in the
> State of New Jersey with L.A. Fitness during the Class Period of
> February 28, 2006 through March 31, 2012, and (b) who paid for
> an additional month of dues (in addition to the application of pre-
> paid last month dues) after L.A. Fitness received a Notice of
> Cancellation, and (c) the payment of an additional month of dues
> was not subsequently refunded.

D.E. No. 41 at 3 ¶ 9. *See also* Class Action Settlement and Release (the "Settlement") §§ 1.16,

1.21, D.E. No. 37-3. Defendant has agreed to award members various types of relief which the

parties value in the aggregate at $3.8 million. On top of this amount, Defendant has agreed to pay

$200,000.00 for attorneys' fees and costs (an amount equivalent to approximately 5.26% of the total settlement), along with $11,065.28 to the named plaintiff plus a $3,000 incentive award and the costs of administering the settlement. Pls.' Settl. Br. at 17, 29, D.E. No. 46.

### B. Notification of the Class and Forms of Relief

Plaintiff represents in its motion that notice has been successfully delivered to 95.87% of the Membership Agreement Class and 96.2% of the Fitness Service Agreement Class, either by mail or email. Pls.' Settl. Br. at 6. Opt-out notices and objections to the Settlement were required to be returned by July 23, 2013. *Id.* at 12. No class members objected to the Settlement and only one class member opted out of the Fitness Service Agreement class before the deadline. *Id.* at 7.

The settlement provides four kinds of relief, two to each class. Members of the Membership Agreement Class automatically received a 45-Day Access Pass (the "45-Day Pass") to L.A. Fitness facilities and may also, upon request, receive a payment for monetary damages in an amount equal to one-third of one month's dues. Pls.' Settl. Br. at 6-7; Notice to Membership Agreement Class at 2, D.E. No. 46-4. Class members had until September 16, 2013 to request monetary payment and have until September 17, 2014 to activate the 45-Day Pass. Pls.' Settl. Br. at 7. As of August 22, 2013—the latest date indicated in Plaintiff's submission—324 class members had activated the 45-Day Pass and 617 had requested monetary payment; these 941 class members, assuming no overlap, represent 2.9% of the class. Pls.' Settl. Br. at 7. Given Plaintiffs' estimate that the 45-Day Pass is worth $52.48 and the cash award is worth $11.67, Pls.' Settl. Br. at 16, Membership Agreement Class members have so far claimed awards worth approximately $24,203.91.

Members of the Fitness Service Agreement Class may choose between one of two kinds of relief, either two free 25-minute personal training sessions or a $100 credit towards a new

Monthly Dues Membership. Notice to Fitness Service Agreement Class at 2, D.E. No. 46-4. Class members have until September 17, 2014 to request one or the other relief. Pls.' Settl. Br. at 7. As of August 22, 2013, 178 class members have requested the training sessions and 262 have requested the credit. Pls.' Settl. Br. at 7. These 440 class members represent 1.7% of the class. Given Plaintiffs' estimate that each of these forms of relief is worth $100, Pls.' Settl. Br. at 16, Fitness Service Agreement Class members have so far claimed awards worth approximately $44,000. In total, then, members of the two classes have claimed awards worth $68,203.91.

The settlement also provides for a cy pres award, according to which unclaimed funds will be awarded to Legal Services of New Jersey. Settlement § 5.10. The funds available for this award are the residual of the cash portion of the award due members of the Membership Agreement Class who request checks but fail to cash them. *Id.* As of August 22, 2013, 617 class members had requested checks, for a total worth approximately $7,200.39. Pls.' Settl. Br. at 7.

## DISCUSSION

### I.    CLASS CERTIFICATION

#### A.    Standard

When certifying a settlement class, courts must follow the general requirements of Rule 23 and, therefore, "a settlement class must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and the Rule 23(b) requirements." *In re Prudential Ins. Co. of Am. Sales Practices Litig.* ("*Prudential I*"), 962 F. Supp. 450, 508 (D.N.J. 1997). Additionally, where, as here, a settlement class is sought to be certified under Rule 23(b)(3), the class must satisfy the Rule's superiority and predominance requirements.

#### B.    Discussion

When the Court granted preliminary approval of the settlement, it approved a preliminary certification of the Class for the purposes of settlement only and found that certification was proper under Rule 23(a) and Rule 23(b)(3). D.E. No. 41 at 3-4 ¶ 10. The reasons which the Eastern District of Pennsylvania found persuasive in the parallel action are even more persuasive here, as that case considered claims from many states and this case applies only to consumers in New Jersey. Mem. re: Approval of Settl. and Attorneys' Fees at 3-4, Sept. 27, 2013, E.D. Pa. Do. No. 2:10-cv-2326, D.E. No. 85. For the same reasons, the Court finds that class certification for settlement purposes is appropriate here as well.

## II.    ADEQUACY OF THE SETTLEMENT

### A.    Standard

The Federal Rules of Civil Procedure require that a district court review settlement and release of claims in a class action and, "if the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This rule requires a district court to "act[] as a fiduciary, guarding the claims and rights of the absent class members." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). The Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) identified nine factors that bear on this analysis:

> (1) the complexity and duration of the ligation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining a class action;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement in light of the best recovery; and
> (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GM Trucks*"), 55 F.3d 768, 785-86 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157). In addition to the *Girsh* factors, the Third Circuit encourages district courts to consider additional factors, such as the probable outcome of a trial on the merits, the probable outcome of claims by other classes or subclasses and whether any provisions for attorneys' fees are reasonable. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions* ("*Prudential II*"), 148 F.3d 283, 323 (3d Cir. 1998). Earlier this year, the Third Circuit added that another important consideration is "the degree of direct benefit provided to the class," including "the size of the individual awards compared to claimants' estimated damages." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (citation omitted).

Though a district court must vigorously protect the interests of absent class members, it also owes deference to a settlement as the negotiated agreement of private parties. As the Third Circuit recently explained, "[s]ettlements are private contracts reflecting negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *Baby Products*, 708 F.3d at 173-74 (citation omitted).

> **B.     Preliminary Issue: The 45-Day Pass, Personal Training Voucher and Membership Credit are "Coupons"**

In evaluating the adequacy of the settlement, the Court must consider whether the Settlement's three types of in-kind compensation are "coupons." Plaintiff argues that the 45-Day Pass and personal training vouchers are not coupons. Pls.' Settl. Br. at 20, n.3. The Court

disagrees, finding that these two forms of compensation, as well as the $100 membership credit, are all coupons.[1]

The Class Action Fairness Act instructs district courts to apply additional scrutiny to class settlements consisting in whole or in part of "coupons." 28 U.S.C. § 1712. As the legislative history reveals, Congress included a "coupon settlement" provision in CAFA to address the situations in which the interests of class members and class counsel diverge: namely, the perverse incentive of class counsel to "negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees." *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1178 (9th Cir. 2013) (citing S. Rep. 109-14, at 29-30 (2005)). Another problem with in-kind compensation is that it may "fail to disgorge ill-gotten gains from the defendant." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting Christopher R. Leslie, "The Need To Study Coupon Settlements in Class Action Litigation," 18 Geo. J. Legal Ethics 1395, 1396-97 (2005)).

First, the court must consider whether the in-kind compensation is a "coupon" at all. "Coupon" is not well-defined in the statute, and only a handful of cases have analyzed it. Plaintiff argues that the passes and vouchers are not "coupons" because they provide a complete benefit, rather than a discount towards a future purchase. Pls.' Settl. Br. at 20, n.3 (citing *Radosti v. Envision EMI*, LLC, 771 F. Supp. 2d 37, 55 (D.D.C. 2010), *Browning v. Yahoo! Inc.*, No. C04-01463, 2007 WL 4105971 at *16 (N.D. Cal. Nov. 16 2007)). But decisions from other

---

[1] The Eastern District of Pennsylvania reached the same conclusion. *See* Mem. re: Approval of Settl. and Attorneys' Fees at 7-9, E.D. Pa. Do. No. 2:10-cv-2326 (Sept. 27, 2013), D.E. No. 85.

district courts are not binding upon this one. CAFA and Third Circuit precedent require higher scrutiny of settlements consisting of in-kind compensation.

Ten years before Congress passed CAFA, the Third Circuit in *GM Trucks* dealt with a coupon settlement and found it grossly inadequate. General Motors had offered $1,000 coupons to owners of trucks with allegedly dangerous fuel tanks. 55 F.3d at 807. The court was troubled that, because the coupons required class members to spend at least $10,000 to enjoy the $1,000 benefit, they functioned not as a benefit to the class but as a "sophisticated GM marketing program." *Id.* Though these were discounts and not vouchers, the court's analysis reflects underlying concerns common to all in-kind compensation. As example, the court found the settlement inadequate in part because it doubted that much of the class would or could take advantage of the alleged benefit. *Id.* at 808. The court also found the coupons' alleged value misleading. *Id.* ("Even where class members do manage to use the certificates, we are concerned about their real value."). *See also Synfuel*, 463 F.3d at 654 (finding a settlement inadequate because the vouchers "share some characteristics of coupons, including forced future business with the defendant and . . . the likelihood that the full amount of [Defendant's] gains will not be disgorged.").

The $100 credit towards a new membership is clearly a discount and thus a "coupon" even under Plaintiffs' own proffered definition: It is a credit which requires class members to spend money in order to realize the benefit. It may actually generate profit for Defendant by bringing in new customers, thus functioning as a "sophisticated [L.A. Fitness] marketing program."

The 45-Day Pass and personal training voucher, though they offer a complete product, are nonetheless exactly the type of in-kind compensation covered by the "coupon settlement"

provisions of CAFA. Though they are vouchers and not discounts, they "share some characteristics of coupons, including forced future business with the defendant." *Synfuel*, 463 F.3d at 654. That is especially cause for concern here because members of the Membership Agreement Class are, by definition, people who no longer wish to do business with Defendant.

The Court finds that the 45-Day pass, the personal training voucher and the $100 membership credit are all "coupons" under CAFA.

### C.    Discussion

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court considers the nine factors from *Girsh v. Jepson*.

#### i.    Girsh *Factor 1: The complexity and duration of the ligation*

This factor is "intended to capture 'the probable costs, in both time and money, of continued litigation.'" *GM Trucks*, 55 F.3d at 811. This factor may favor settlement where seeing a claim through to trial would require, for example, "additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004).

The case at issue is not very complex. There is only one Defendant involved and the claims are straightforward. The scope is narrow, since it involves only New Jersey consumers. Yet a trial—especially a class action trial—is always an expensive affair. Because the Settlement provides substantial and immediate benefits for the Class, as opposed to the expense and uncertainty of continued litigation, this factor weighs in favor of approving the Settlement.

#### ii.    Girsh *Factor 2: The reaction of the class to the settlement*

The second *Girsh* factor "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." *In re Schering-Plough/Merck Merger Litig.*, No. 09-

cv-1099, 2010 WL 1257722 at *9 (D.N.J. Mar. 26, 2010) (quotation and citation omitted).

Typically, courts analyze this factor by counting the number of objectors and weighing the

vociferousness of their objections. *Prudential II*, 148 F.3d at 318 (finding reaction favorable

where, of 8 million class members, 19,000 opted out and 300 objected). In addition, courts

frequently consider not only how many class members object but also how many come forward

to claim the proffered relief. *See GM Trucks*, 55 F.3d at 812 (warning that the assumption that

"silence constitutes tacit consent to the agreement" may not always be appropriate); *In re*

*Cendant Corp. Litigation*, 264 F.3d 201, 234 (3d Cir. 2001) (120,000 claims were filed); *In re*

*Pet Food Products Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010) (9,357 claims filed); *In re*

*Philips/Magnavox Television Litig.*, No. 09-3072, 2012 WL 1677244 (D.N.J. May 14, 2012)

(10% of the class downloaded claim forms); *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045,

2006 WL 2085282 (D.N.J. July 24, 2006) *aff'd*, 266 F. App'x 114 (3d Cir. 2008) (46% of the

class filed claims); *In re Am. Family Enterprises*, 256 B.R. 377, 418 (D.N.J. 2000) ("Over

143,000 persons filed claims"). This Court has found no case that prohibits district courts from

considering participation in this way.

      Here, class members are not enthusiastic about the Settlement. Though there have been

no objections and only one opt out, fewer than three percent of the class has stepped forward to

claim relief. This cancels out the lack of objections, so this factor weighs neither for nor against

approval of the Settlement.

      *iii.*     Girsh *Factor 3: The stage of the proceedings*

      This factor requires the Court to examine the level of case development that transpired

before settlement. The aim of this factor is to ensure that class counsel has an "adequate

appreciation of the merits of the case before negotiating" a settlement. *Prudential II*, 148 F.3d at 319 (quoting *GM Trucks*, 55 F.3d at 813).

The parties exchanged initial disclosures and arrived at the Settlement after negotiation before a retired federal judge. Pls.' Settl. Br. at 3; Wolf Decl. at 7 ¶ 25, D.E. No. 46-1. The Court finds that all parties have an "adequate appreciation of the merits of the case." This factor weighs in favor of the Settlement.

      *iv.*     Girsh *Factors 4 and 5: The risks of establishing liability and damages*

Under the fourth and fifth *Girsh* factors, the Court must consider the risk of establishing liability at trial in order to balance the parties' relative likelihood of success against the immediate benefits derived from a settlement. *See Prudential II*, 148 F.3d at 319. These factors are weighed against the best and worst possible outcomes for plaintiffs. *See In re Cendant*, 264 F.3d at 237-39. To the extent that establishing damages is contingent upon liability, many of the same risks will be present in each analysis.

Plaintiffs survived the initial hurdle of Defendant's motion to dismiss. D.E. No. 20. Though this surely improved Plaintiffs' chances, both parties at the Fairness Hearing claimed to have greater than 50 percent confidence of prevailing at trial. While surely those claims involved some puffery, they underscore the considerable uncertainty that inheres in an aggregate matter like this one. Weighing these risks of litigation against the definite and immediate resolution of these claims, this factor weighs in favor of approving the Settlement.

      *v.*     Girsh *Factor 6: The risks of maintaining a class action*

"Because a district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable, the specter of decertification makes settlement an appealing alternative." *O'Brien v. Brain Research Labs, LLC*, Civ. No. 12-cv-204,

2012 WL 3242365 at *18 (D.N.J. Aug. 9, 2012) (quoting *Warfarin*, 391 F.3d at 537) (quotation

marks omitted). In other words, continuing litigation sometimes presents plaintiffs with the risk

of losing class certification and any substantial trial award, so a settlement which provides

immediate and definite relief is preferable to the prospect of receiving no relief at all.

The putative class here is relatively easy to maintain. All putative class members live in a

single state and they all signed the same form contract or contracts. Granted, certification would

be contested—Defendant represented at the fairness hearing its plan to challenge class treatment

with an argument that class members had individualized understandings of the meanings of the

contracts they signed. Nonetheless, this class is easier to certify than most.

At this juncture, free of future vagaries, it is in the interests of both sides to come to this

settlement. And so this factor weighs in favor of settlement.

> vi.    Girsh *Factor 7: The ability of the defendants to withstand a greater judgment*

This factor considers "whether the defendants could withstand a judgment for an amount

significantly greater than the [s]ettlement." *In re Cendant*, 264 F.3d at 240. For example, if a

larger judgment would tip the defendant into bankruptcy, a court will find this factor to support

the settlement to allow the defendant to continue to exist. *Id.*

The Court's determination that the Settlement's compensation consists largely of

"coupons" is significant here because Defendant's actual exposure is nowhere near the alleged

$3.8 million value of the Settlement. In fact, this Settlement impacts Defendant hardly at all. So

far, class members have claimed awards worth $68,203.91. But even if every class member

claimed her benefit, $3.8 million is a gross exaggeration of the cost to Defendant for two

reasons.

First, the cash value of the Settlement is vanishingly small. As of August 22, 2013, only 617 class members had requested cash payouts, reflecting a cost to Defendant of about $7,000. Pls.' Settl. Br. at 6-7. Even if the remaining 20,852 consumers in the Membership Agreement Class requested their checks for $11.67 before the September 16, 2013 deadline—an unlikely prospect—this only amounts to $250,000. The small size of Defendant's cash exposure is particularly troubling since the Settlement's cy pres award comes not from the alleged $3.8 million common fund, but only from that portion of the $250,000 which is requested but not cashed. Settlement §§ 5.9-10, D.E. No. 46-3.

Second, the $3.8 million figure is misleading because it is based solely on the value *to class members*. The seventh *Girsh* factor and CAFA require this Court to consider not only the benefit to the class but also the cost to Defendant. The parties' suggested values of $52.48 for the 45-Day pass and $100 each for the personal training sessions and gym membership credit may be appropriate for consumers, but the costs to Defendant are much lower. Defendant already has health clubs operating in New Jersey; given these sunk costs, the marginal cost of a few hundred extra visits by holders of the 45-Day Passes is close to zero.

Defendant could surely withstand a greater judgment. This factor weighs against approval of the Settlement.

> vii.   Girsh *Factors 8 and 9: The range of reasonableness of the settlement in light of the best recovery and all the attendant risks of litigation*

The last two *Girsh* factors go to the settlement's adequacy, namely, "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. One way to gauge the adequacy of the settlement is to consider the relief which Plaintiffs initially requested in the complaint. *GM Trucks*, 55 F.3d at 810. Earlier this year, the Third Circuit added that another important consideration is "the degree of direct benefit provided

to the class," including "the size of the individual awards compared to claimants' estimated damages." *In re Baby Products Antitrust Litig.*, 708 F.3d at 174.

Here, Plaintiffs requested declaratory relief that Defendant had broken various state laws; injunctive relief prohibiting future violations of those laws; and damages, refunds and interest. Am. Compl. ¶¶ a-j, D.E. No. 11. The "coupon" issue is also relevant here, as the Court compares the relief requested to the relief received.

Plaintiffs did not secure declaratory relief. Plaintiffs received its intended injunctive relief in the sense that Defendant has changed its cancellation policy. But Defendant did so in 2010 following a separate class action in California—it is also a condition of the settlement in the Eastern District of Pennsylvania, Settlement § 3.4, E.D. Pa. Do. No. 2:10-cv-02326, D.E. 78-3. So that relief is not relevant here.

Nonetheless, Plaintiffs' damages under the Settlement fall within the range of reasonableness. The harm each claimant allegedly suffered was small: for the Membership Agreement Class, a reasonable measure of damages is the $30 incurred for an extra month's dues. In light of that figure, a transferable 45-Day Pass plus a small cash award is sufficient. For the Fitness Services Agreement Class, the likely damages are more difficult to calculate, except to the extent that the alleged violations of the New Jersey Retail Installment Sales Act could total $65. *See* Am. Compl. Third Count, ¶¶ 89-100. That makes the $100 relief appropriate.

This settlement is a good value. Though the Settlement will not come close to its alleged $3.8 million value, it nonetheless falls within the range of reasonableness and is fair enough. These factors weigh in favor of approval.

viii. Prudential *Factors*

The Third Circuit has suggested that a district court may want to consider additional factors when evaluating a settlement, including probable outcome of a trial on the merits, the probable outcome of claims by other classes and whether any provisions for attorneys' fees are reasonable, among others. *Prudential II*, 148 F.3d at 323.

Last week, the Eastern District of Pennsylvania affirmed a settlement in the parallel action affecting class members in other states. Mem. re: Approval of Settl. and Attorneys' Fees, E.D. Pa. Do. No. 2:10-cv-2326 (Sept. 27, 2013), D.E. No. 85. The settlement there has terms substantively similar to this one. *Id.* §§ 3.1-2. In addition, as discussed later, the provisions for attorneys' fees are reasonable.

This factor weighs in favor of approval.

ix. *Conclusion*

Considering the *Girsh* factors, the Court finds that the Settlement "represents a good value." *GM Trucks*, 55 F.3d at 806. Two of the factors weigh against approving the Settlement: reaction of the class and ability of the Defendant to withstand a greater judgment. Though the parties' claimed value for the Settlement of $3.8 million is inflated and misleading—based, as it is, on a faulty assumption that 100% of class members will claim their relief—the Settlement is fair enough, especially given the risks of litigation.

III. ATTORNEYS' FEES

Plaintiffs request final approval of the $200,000.00 in attorneys' fees and expenses negotiated under the Settlement, which Defendant has agreed to pay over and above the amount it has set aside for relief to the class. Plaintiffs' counsel argues that these fees are reasonable and amount to just 5.2% of the Settlement fund. Pls.' Settl. Br. at 21.

The Third Circuit has established two methods for evaluating the award of attorneys' fees: (1) the lodestar approach, and (2) the percentage of the recovery approach. *GM Trucks*, 55 F.3d at 820–21; *see Prudential II*, 148 F.3d at 333. The Third Circuit has emphasized that "[t]he percentage of recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *Prudential II*, 148 F.3d at 333). As awards increase in size, the percentage awarded to counsel should decline. *In re Cendant*, 232 F. Supp. 2d at 337. Factors a district court should consider when evaluating attorneys' fees include the size of the fund created and the number of persons benefitted, objections by class members, counsel's skill and efficiency, the complexity and duration of the litigation, the risk of nonpayment, the amount of time counsel spent on the case and awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Settlement is worth as much as $3.8 million and benefits as many as 46,000 New Jersey consumers. Counsel, who have substantial class action experience, secured this result quickly and efficiently, after less than two years of litigation. Unfortunately, class members have claimed cash and coupons worth only $68,000, creating a distasteful scenario where the fee awarded to counsel ($200,000) exceeds the value of the relief which class members have claimed by a factor of three. But that blame must ultimately lie with the duly notified class members. Counsel's labors have been fruitful and their request is modest, so it is granted.

The Third Circuit suggests that district courts "cross-check" a percentage-of-recovery award against the lodestar amount. *In re Rite Aid*, 396 F.3d at 300. The cross-check is particularly important here because a strict reading of CAFA would compel the Court to deny

counsel's fee request, based as it is on the total value of the Settlement fund and not only on those coupons that have been redeemed. 28 U.S.C. § 1712(a). Thus a lodestar calculation may be appropriate because the "expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *Prudential II*, 148 F.3d at 333.

Counsel has estimated its relevant lodestar at $161,615.50, or 389 hours at an average rate of $415 per hour. Pls.' Settl. Br. at 22; Pls.' Settl. Br. Ex. I at 83, D.E. 46-6. Counsel's request for $200,000 thus reflects a multiplier of 1.2, below the multiplier range of 1.35 to 2.99 which the Third Circuit has said is reasonable. *In re Cendant PRIDES*, 243 F.3d at 742.

The award of attorneys' fees and expenses is approved.

## IV.     THE INCENTIVE AWARD

It is perfectly appropriate to compensate a named plaintiff in a class action. *See, e.g.*, *Chemi v. Champion Mortgage*, No. 2:05-cv-1238, 2009 WL 1470429 at *13 (D.N.J. May 26, 2009) ("Numerous courts have recognized the authority to award compensation to named plaintiffs in class action litigation") (citation omitted). The settlement provides for an award to Plaintiff Martina of $11,065.28. Pls.' Settl. Br. at 29. This sum will resolve charges from Martina's credit card company. *Id.* She will also receive a $3,000 incentive award. *Id.* The Court finds this award to be reasonable in light of the time that the lead Plaintiff invested in the matter.

## CONCLUSION

When considered under the various factors discussed, the evidence presented by Plaintiffs weighs in favor of final approval of the Settlement. The Court grants Plaintiffs' request for final approval of the Settlement and counsel's request for attorneys' fees and costs.


Date: October 8, 2013

**s/ William H. Walls**
United States Senior District Judge
